UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



15 CV 01337

------------------------------------------------------------x

DEKALB COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

          Plaintiff,

vs.

CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. de C.V., ENRIQUE BELTRANENA, FERNANDO SUÁREZ, GILBERTO PEREZALONSO CIFUENTES, PEDRO CARLOS ASPE ARMELLA, BRIAN H. FRANKE, WILLIAM A. FRANKE, DEUTSCHE BANK SECURITIES INC., MORGAN STANLEY & CO. LLC and UBS SECURITIES LLC,

          Defendants.

------------------------------------------------------------x

Civil Action No.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED



RECEIVED FEB 24 2015 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Dekalb County Employees Retirement System ("Plaintiff") makes the following allegations based upon the investigation undertaken by its counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings made by Controladora Vuela Compañía de Aviación, S.A.B. de C.V. (Volaris Aviation Holding Company) hereinafter referred to as ("Volaris" or the "Company"), as well as securities analysts' reports, advisories, press releases, media reports and other public statements issued about or by the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons or entities, (the "Class"), who purchased Ordinary Participation Certificates ("CPOs") in the form of American Depositary Shares ("ADSs") in and/or traceable to the Company's initial public offering on or about September 18, 2013 (the "IPO") seeking to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

2. Defendant Volaris provides air transportation services for passengers, cargo, and mail in Mexico and internationally.

3. On June 6, 2013, Volaris filed a Registration Statement on Form F-1 with the SEC, which would later be utilized for the IPO following several amendments in response to comments by the SEC. On September 17, 2013, the SEC declared the Company's Registration Statement effective and the Company sold 226,469,000 CPOs in the form of ADSs for $12.00 each.

4. The Registration Statement, which incorporated a Prospectus, covered two offerings, which were conditioned upon each other: (i) an international offering through the Underwriter Defendants (defined below), and others, in the United States and countries other than Mexico; and (ii) an offering in Mexico. In the international offering, the Company offered 132,191,950 CPOs in

the form of ADSs, and the selling shareholders offered 94,277,050 CPOs in the form of ADSs. Each ADS represents ten CPOs.

5. On September 18, 2013, the Company's ADSs were listed and began trading on New York Stock Exchange ("NYSE") under the trading symbol "VLRS."

6. This action relates to the ADSs listed on the NYSE that were sold in the IPO. The Registration Statement issued in connection with the IPO was negligently prepared and, as a result, contained untrue statements of material fact and omitted to disclose material information required pursuant to the regulations governing the preparation of the Registration Statement.

7. Specifically, the Registration Statement negligently contained financial statements that were presented in violation of applicable accounting standards and the Company's publicly disclosed accounting policies. In addition, the Registration Statement failed to disclose certain material events known to Defendants that caused the financial information reported in the Registration Statement not to be indicative of Volaris' future operating results. These material events included: (i) the financial effects ensuing from a change in the Company's airline reservation system; and (ii) an expansion of competition in the Tijuana and Guadalajara, Mexico markets, which was having a material adverse effect on the Company's revenues and profit margins at the time of the IPO.

8. At the time of the filing of this action, the ADSs of Volaris trade at approximately $9.19 per ADS, or approximately 23% less than the IPO price.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§77k and 77o].

10. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §§1331.

11. Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District, the Company's ADSs trade on the NYSE, which is located in this District, and the Underwriter Defendants are either headquartered or located in this District.

12. In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NYSE.

## PARTIES

13. Plaintiff purchased Volaris ADSs, as set forth in the certification attached hereto and incorporated herein by reference, traceable to the IPO and was damaged thereby.

14. Defendant Volaris provides air transportation services for passengers, cargo, and mail in Mexico and internationally. The company was incorporated under the law of the United Mexican States and is headquartered in Mexico City, Mexico.

15. Defendant Enrique Beltranena ("Beltranena") is, and was at the time of the IPO, the Chief Executive Officer of Volaris.

16. Defendant Fernando Suárez ("Suárez") is, and was at the time of the IPO, the Chief Financial Officer of Volaris.

17. Defendant Gilberto Perezalonso Cifuentes is, and was at the time of the IPO, a Director and the Chairman of the Board of Volaris.

18. Defendant Pedro Carlos Aspe Armella is, and was at the time of the IPO, a director of Volaris.

19. Defendant Brian H. Franke is, and was at the time of the IPO, a director of Volaris.

20. Defendant William A. Franke is, and was at the time of the IPO, a director of Volaris.

21.     The Defendants named in ¶¶15-20 are collectively referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement issued in connection with the IPO.

22.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is an investment bank located in New York, New York that offers securities brokerage and investment advisory services to both domestic and international private clients and institutions and correspondent clearing services to broker-dealers. Deutsche Bank acted as an underwriter of Volaris' IPO, helping to draft and disseminate the offering documents.

23.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is a boutique investment banking firm located in New York, New York that offers financial advisory and security brokerage services. Morgan Stanley acted as an underwriter of Volaris' IPO, helping to draft and disseminate the offering documents.

24.     Defendant UBS Securities LLC ("UBS") is an investment bank located in New York, New York that offers equities trading and research, mergers and acquisitions advice, foreign exchange trading, and financing to corporate, institutional, and government clients.

25.     The Defendants named in ¶22-24 are collectively referred to herein as the "Underwriter Defendants." The Underwriter Defendants participated in the drafting and dissemination of the Registration Statement and collectively received discounts and commissions of approximately $9.5 million in connection with the IPO.

26.     The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters and were negligent in failing to ensure that the Registration Statement was prepared properly, accurately and free from misstatements or omissions of material fact. The

Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

27. Defendant Volaris, the Individual Defendants and the Underwriter Defendants are collectively referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all persons or entities who purchased Volaris ADSs in and/or traceable to the Company's IPO on or about September 18, 2013. Excluded from the Class are Defendants named herein, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

29. The members of the Class are so numerous that joinder of all members is impracticable. Volaris issued 22.6 million ADSs in the IPO. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Volaris or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

31.     Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged herein violated the Securities Act;

(b)     whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and/or omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

## SUBSTANTIVE ALLEGATIONS

### The Company and Its Business

34.     Defendant Volaris provides passenger and cargo services in Mexico and the United States. The Company's strategy aims to stimulate demand for air travel by offering low base fares, while generating ancillary revenues from other services.

35. Volaris can offer its customers reduced airfares because its cost structure is lower than its U.S. based publicly-traded competitors, including Alaska Airlines, American Airlines, Delta Air Lines, and United Airlines, as well as publicly-traded Latin American airlines. According to the Registration Statement, Volaris is able to achieve low operating costs, in large part, due to its uniform and efficient fleet of Airbus A320 family aircraft; high density aircraft seat configuration; high aircraft utilization rate; direct sales distribution system; and performance based compensation structure.

36. Given its low base airfare strategy, the Registration Statement explains that Volaris' profitability relies significantly upon revenue generated by its portfolio of "non-ticket" activities, including revenue from ancillary products and services revenue and cargo.

37. The Company's non-ticket revenues are generated from fees for, among other things, baggage, advance seat selection, itinerary changes, sales of onboard products and other items sold in conjunction with the Company's scheduled air service. The Registration Statement notes that Volaris may not be able to execute its lower base airfare strategy if it is unable to maintain and grow revenue from its non-ticket activities.

### The Registration Statement Contained Inaccurate Statements of Material Fact and Omitted Material Information Required to Be Disclosed Therein

38. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact and omitted to disclose material information which was required to be disclosed pursuant to the regulations governing its preparation.

39. The Registration Statement included Volaris' audited financial statements for each of the three years ended December 31, 2012 (the "annual financial statements") and its unaudited financial statements for three and six month periods ended June 30, 2013 and June 30, 2012 (the "interim financial statements"). The interim financial statements represented that they should be

"read in conjunction with" the annual financial statements given that they did not include all of the information and disclosures presented in the annual financial statements.

40. The Registration Statement inaccurately represented that the above noted financial statements were presented in accordance with International Accounting Standards. This representation was false because the annual financial statements stated that Volaris' recognized non-ticket revenue when the service was provided, which is typically the flight date. Concerning the Company's revenue recognition policy, the Registration Statement stated, in pertinent part, as follows:[1]

> Revenue Recognition. Revenues from the air transportation of passengers and commissions from ground transportation services are recognized at the earlier of when the service is provided or when the non-refundable ticket expires at the date of the scheduled travel. Ticket sales for future flights are initially recognized as liabilities under the caption unearned transportation revenue and, upon provision of the corresponding transportation service or expiration of the ticket, the earned revenue is credited to operations as revenues and the liability account is reduced by the same amount. All of our tickets are non-refundable, and subject to change upon the payment of a fee. Additionally, we do not operate a frequent flier program. ***Non-ticket revenue includes fees relating to transportation of cargo, charter flight services, excess baggage, advance seat selection, extra legroom, carriage of sports equipment and pets, ticket changes, VClub subscriptions, the Volaris affinity credit card and onboard advertising. All such revenues are collected from passengers and recognized as non-ticket revenue when the service has been provided, which is typically the flight date.***

41. Following the IPO, on February 26, 2014, Volaris announced its financial results for the 2013 fiscal fourth quarter and year end, the periods ended December 31, 2013. After the earnings announcement, the Company held a conference call with analysts and investors (the "February 26 Conference Call") to discuss its operations. During the February 26 Conference Call, Defendant Suarez stated, in contradiction to the representations in the Registration Statement and in violation of International Accounting Standards, that Volaris recognized non-ticket revenue at the

---

[1] Unless otherwise noted, all emphasis herein is added.

time *of sale* and not at the time *of flight*. In that regard, Defendant Suarez stated, in pertinent part, as follows:

> ***With our reservation system migration, we now have the tools to refine our revenue recognition of certain ancillaries like excess baggage and special services at the time of flight. Prior to this, we have to recognize these certain ancillary revenues at the time of sale.***
>
> \* \* \*
>
> And again these ancillaries are specific to excess baggage and special services that we are now able to identify with a new platform when exactly is the ***time of service rendered or applied as opposed to previously that we have to book them when we sold them.***

42.     During the February 26 Conference Call, Defendant Suarez also indicated that the Company did not have the ability to recognize revenue at the time of flight, in accordance with applicable accounting standards and its publicly stated accounting policy, until the fourth quarter of 2013, and that the effect of the change in Volaris' revenue recognition policy reduced its 2013 fourth quarter revenue by MXN48 million, stating, in pertinent part, as follows:

> ***We did switch -- mentioned our reservation system in October and it did take us sometime, some weeks to test and stabilize the ancillary platform.*** We also amended our baggage policy in October as planned. The enforcement and standardization in airports took us practically the full quarter to fully implement. Also our on board retail program only started in mid-December.
>
> \* \* \*
>
> ***We estimate that the one-time effect of this fourth quarter 2013 was a reduction in non-ticket revenues of approximately MXN48 million,*** or MXN21 per passenger that will be revenue recognized during the course of 2014, as such services are rendered at time of flight.

43.     Accordingly, the annual and interim financial statements included in the Registration Statement were materially inaccurate in that they reported non-ticket revenue which was recognized at the time of sale and not the time of flight. This misstatement, which caused the annual and interim financial statements included in the Registration Statement to be presented in violation of the

- 9 -

Company's publicly stated accounting policies and applicable accounting standards, was material because as the Registration Statement explains, Volaris' profitability relies significantly upon revenue generated by its portfolio of "non-ticket" activities.

44. Item 4 of Form F-1 required the Registration Statement to furnish the information required by Part I of Form 20-F. Item 5 of Part I of Form 20-F required the Registration Statement to provide "management's explanation of factors that have affected the company's financial condition and results of operations for the historical periods covered by the financial statements, and management's assessment of factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods."

45. Item 5 of Part I of Form 20-F also required that Registration Statement discuss the Company's results of operations for each year and interim period for which financial statements were provided including significant "unusual or infrequent events or new developments, materially affecting the company's income from operations" and "any other significant component of revenue or expenses necessary to understand the Company's results of operations."

46. In addition, Item 5 of Part I of Form 20-F also required that Registration Statement "discuss, for at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition."

47. In violation of these disclosure obligations, the Registration Statement negligently failed to disclose known unusual or infrequent events, new developments and/or known trends, uncertainties or events that was reasonably likely to have a material adverse effect on Volaris'

revenues and profitability during its 2013 fourth quarter, including those associated with enhancements made to the Company's airline reservation system resulting in the recognition of non-ticket revenue at the time of flight.

48.     In addition to the foregoing, the Registration Statement was required to disclose that an expansion of competition in the Tijuana and Guadalajara markets was having a material adverse effect on the Company's revenues and profit margins at the time of the IPO. Instead, the Registration Statement spoke positively regarding the Company's markets and growth opportunities as well as its growth strategy:

> ***Our principal target markets in Mexico and the United States are large and we believe present us with significant growth opportunities for VFR, cost-conscious business people and leisure travelers.*** Mexico has a population of approximately 112 million, with an estimated annual population growth rate of approximately 1.4%, according to the INEGI. In addition, Mexico is the fifth largest emerging economy worldwide and the second largest in Latin America, with an estimated gross domestic product, or GDP, of U.S. $1.30 trillion in 2012 and GDP growth of 3.9% in 2012, according to the INEGI. Mexico is projected to have GDP growth of 2.7% in 2013 and 4.0% in 2014, according to the Mexican Central Bank. This projected GDP growth is expected to result in an increase in the number of middle-income homes in Mexico. ***We believe these trends are likely to lead to significant long-term growth in passenger volumes due to the strong historical correlation between economic growth and increased airline traffic.***
>
> In 2012, Mexico had 28.1 million domestic air travelers as compared to 24.4 million in 2009, which represents a three-year compound annual growth rate, or CAGR, of 4.8%. In the international market, Mexico had 28.5 million travelers in 2012 as compared to 24.2 million in 2009, which represents a three-year CAGR of 5.6%. Of those international passengers, approximately 19.4 million or 68% travelled to the United States. However, we believe that the Mexican air transportation industry still remains under-developed. Domestic and international air trips per capita in 2011, adjusted for income, were 0.46 in Mexico, compared to 1.71 in the United States, 1.78 in Panama and 0.58 in Colombia, according to the DGAC in Mexico, the Bureau of Transportation Statistics in the United States, the Civil Aviation Authority (Autoridad Aeronáutica Civil) in Panama and the Civil Aviation Authority (Aeronáutica Civil) in Colombia, respectively. We believe that substantial investments made in airport infrastructure in Mexico over the last ten years will help to sustain this expected growth.
>
> As a key growth market, we target executive and luxury bus passengers who travel more than five hours. We have been able to successfully stimulate demand for our

services among long-distance bus passengers by offering fares that are low enough to make it economical for these passengers to switch from bus to air travel. There is a large bus industry in Mexico, with total passenger segments of approximately 2.8 billion in 2012, of which approximately 74.4 million were executive and luxury passenger segments, according to the Mexican Authority of Ground Transportation (Dirección General de Autotransporte Federal), including both long- and short-distance travel. We believe a small shift of bus passengers to air travel would dramatically increase the number of airline passengers and bring Mexico's air trips per capita figures closer to those of other countries in the Americas. There are limited passenger rail services in Mexico.

***In the face of substantial competition, we have been able to expand our business. Since we introduced our ULCC business model in 2006, eight airlines have gone out of business in Mexico, including Grupo Mexicana, which ceased operations in 2010.*** We believe that we will continue to compete successfully as a result of our ULCC business model, revenue unbundling strategy, and high quality customer focus that stimulate demand.

49. During the February 26 Conference Call to discuss the Company's operations, Defendants Beltranena acknowledged that competition in Volaris' Tijuana and Guadalajara markets had a material adverse effect on the Company's 2013 fourth quarter revenues and operating profits, stating, in pertinent part, as follows:

Michael Linenberg, Analyst:

. . . when we look at the revenue performance, I mean, I think for the quarter your passengers were up close to 18%, but your total revenue was down 1%, and I know that maybe some of this was due to the pricing environment. But was any of this related to the migration to the new res [reservation]system or was any of it related to the fact that you ramped up, I think you ramped up 14 new markets.

So if you could give us just maybe a feel for how much of that revenue softness maybe it was increased competition, maybe it was new market ramp-up, maybe it was just moving to a new res system because we've seen that with other airlines when they migrate to a new system. They typically do leave some revenue on the table. So any additional color you can give us on the revenue production, and maybe what impacted it for the quarter would be great? Thanks.

Defendant Beltranena:

. . . Finally breaking down this, what happened with the revenues, I think it's a mixture of three things . . . . ***Clearly a much more competitive environment in the Tijuana and Guadalajara routes[,] [] much more pressure in terms of fares, dramatic much more pressure.*** There in those routes relieved 30% reduction in

some routes and 40% reduction in some routes, and then the general environment, in the rest of the markets, which affected the pricing levels. I think that's basically the answer, Michael. I hope I answered your question.

50. In addition to the foregoing, Item 3 of Form F-1 required that the Registration Statement furnish the information called for under Item 503 of Regulation S-K [17 C.F.R. §229.503], including, among other things, a "discussion of the most significant factors that make the offering risky or speculative."

51. The Registration Statement negligently failed to disclose the then existing (as opposed to potential) risks, including those associated with lower yields caused by price competition.

52. As a result of the foregoing, the Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not inaccurate, was not prepared in accordance with the rules and regulations governing its preparation, and was in violation of the Securities Act.

## COUNT I

### For Violation of §11 of the Securities Act
### Against All Defendants

53. Plaintiff incorporates ¶¶ 1-52 by reference.

54. This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

55. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

56. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

57. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

58. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

59. Plaintiff acquired Volaris ADSs traceable to the IPO.

60. Plaintiff and the Class have sustained damages. The value of Volaris ADSs has declined substantially subsequent to and due to Defendants' violations.

61. At the time of their purchases of Volaris ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action. Less than three years has elapsed between the time that the ADSs upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

### COUNT II

### For Violation of §15 of the Securities Act
### Against the Company and the Individual Defendants

62. Plaintiff incorporates ¶¶ 1-61 by reference.

63. This Cause of Action is brought pursuant to §15 of the Securities Act against the Company and the Individual Defendants.

64. The Individual Defendants each were control persons of Volaris by virtue of their positions as directors and/or senior officers of Volaris. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers

and/or major shareholders of Volaris. The Company controlled the Individual Defendants and all of Volaris' employees.

65. The Individual Defendants each were culpable participants in the violations of §11 of the Securities Act alleged in the Cause of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding rescission or a rescissory measure of damages; and

E. Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: February 24, 2015  
ROBBINS GELLER RUDMAN  
  & DOWD LLP  
SAMUEL H. RUDMAN  
MARIO ALBA JR.

/s/ Samuel H. Rudman
———————————————————
SAMUEL H. RUDMAN  
58 South Service Road, Suite 200  
Melville, NY  11747  
Telephone: 631/367-7100  
631/367-1173 (fax)  
srudman@rgrdlaw.com  
malba@rgrdlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

DEKALB COUNTY EMPLOYEES RETIREMENT SYSTEM ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*In re NII Holdings, Inc. Sec. Litig.*, No. 14-cv-00227 (E.D. Va.)

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of

VOLARIS

any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of February, 2015.

                DEKALB COUNTY EMPLOYEES
                RETIREMENT SYSTEM

                By: _____
                       Jelani K. Hooks, Administrator

- 2 -

## SCHEDULE A
## SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 12/23/2013 | 400 | $13.54 |
| 12/23/2013 | 1,900 | $13.54 |
| 12/27/2013 | 1,200 | $13.69 |
| 12/27/2013 | 1,300 | $13.69 |
| 12/30/2013 | 2,600 | $13.55 |
| 12/31/2013 | 500 | $13.50 |
| 01/02/2014 | 800 | $13.62 |
| 01/03/2014 | 2,000 | $13.58 |
| 01/07/2014 | 100 | $13.70 |
| 01/09/2014 | 200 | $13.70 |
| 01/10/2014 | 900 | $13.70 |
| 01/13/2014 | 600 | $13.70 |
| 01/15/2014 | 1,100 | $13.70 |
| 01/15/2014 | 1,800 | $13.77 |
| 01/16/2014 | 1,400 | $13.60 |
| 01/17/2014 | 500 | $13.36 |
| 01/17/2014 | 4,500 | $12.84 |
| 01/21/2014 | 800 | $12.31 |
| 01/23/2014 | 2,400 | $12.00 |
| 01/27/2014 | 200 | $11.50 |
| 02/03/2014 | 1,300 | $11.44 |
| 02/04/2014 | 600 | $10.75 |
| 02/07/2014 | 700 | $10.99 |
| 02/26/2014 | 7,100 | $9.92 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/25/2014 | 4,800 | $8.49 |